## 21057

Carlos M. HANNA, Appellant, v. CITY OF FLORENCE, C. Cooper Tedder, J. Madison Rainwater, Simons L. Chase, Herbert G. Ham, William P. Campbell, Mordecai C. Johnson, John A. Sellers, as Mayor and Councilmen respectively of the City of Florence, Respondents.

(258 S. E. (2d) 500)

D. *Laurence McIntosh,* of *Wright, Scott, Blackwell & Powers,* Florence, *for Appellant.*

*James R. Bell,* Florence, *for Respondents.*

September 18, 1979.

*Per Curiam:*

This is an appeal from an order entering summary judgment for respondents. The Order of The Honorable David W. Harwell, Circuit Judge, sets forth and properly disposes of the issue submitted to this Court. Let that order omitting the first two sentences be printed as our directive.

## ORDER OF JUDGE HARWELL

* * * Plaintiff has sought a declaratory judgment as to the legal authority of the City Council of the City of Florence of enacting an Ordinance calling for a special election for the purpose of obtaining the approval for the issuance and sale of certain general obligation bonds in the amount not to exceed Five Million Five Hundred Thousand and No/100 ($5,500,000.00) Dollars for the purpose of financing a municipally-owned and operated civic center. Essentially, it is the contention of the Plaintiff that the manner in which the Defendants have called for this referendum is in violation of Article XVII, Section 7B, of South Carolina Constitution and Section 5-21-250, *Code of Laws of South Carolina, 1976,*

which provided that a Petition signed by a majority of the freeholders of the municipality is a *condition precedent* to the holding of a referendum.

The defendants have filed responsive pleadings and have moved for summary judgment. At the hearing held July 25, 1979, Counsel for the parties hereto agreed that there was no genuine issue of fact and that the action should be decided as a matter of law. This Court accordingly has so treated this matter.

The facts are undisputed. On or about June 11, 1979, the City Council of City of Florence passed on third and final reading an Ordinance calling for an election to be held on November 6, 1979, for the purpose of obtaining the approval of the voters granting the authority to the governing body of the city to issue general obligation bonds for the purpose and in the amount as hereinabove stated. It is also undisputed that a Petition from the majority of the freeholders of the City as shown on its taxbooks has not been filed. City Council acted on its own in calling for the referendum by passing the Ordinance referred to herein. In fact, the Defendants have admitted in their Answer that the Petition method had not been complied with, however, the defendants have alleged that the Petition method is no longer required by virtue of the enactment of Article X, Section 14, of the South Carolina Constitution. Defendants contend that this Constitutional amendment, and its implementing legislation, Act No. 125 of 1977, which is codified as Section 11-27-10, *et seq.* has repealed the requirement of the majority of a municipality's freeholders filing a Petition requiring the holding of an election of the sort provided for by the Constitution of this State upon the question of issuing bonds of the municipality.

The plaintiff appears correct in his allegations that Article XVII, Section 7B and Section 5-21-250, *Code of Laws of South Carolina, 1976,* both contain provisions requiring the filing of a Petition signed by a majority of freeholders of a

municipality as a conditon precedent to a municipality in this State authorizing a special election for the purpose of issuing bonds. However, Article X, Section 14, of the South Carolina Constitution which is entitled "Bonded Indebtedness of Political Subdivision", does not contain any language or provision requiring or calling for a Petition by the majority of a municipality's freeholders as a condition precedent to holding an election for the consideration of a municipality's citizens to vote upon a general obligation bond issuance. Subsection (2) clearly provides, "The political subdivisions of the State shall have power to incur bonded indebtedness in such manner and upon such terms and conditions as the General Assembly shall prescribe by general law within the limitations set forth in this section and Section XII of this Article." Subsection (6) of this same Article and Section of the State Constitution provides, "If general obligation debt be authorized by a majority vote of the qualified electors of the political subdivision voting in a referendum authorized by law, there shall be no conditions or restrictions limiting the incurring of such indebtedness, except. . . . ". There is no provision in the exceptions which calls for the requirement of a Petition by a majority of the freeholders.

The court is now, therefore, called upon to determine whether or not Article X, Section 14, of the State Constitution hereby repeals the previous constitutional requirement of a Petition filed by a majority of the freeholders as being a condition precedent to holding a special election authorizing the issuance of general bonds in an amount which will exceed the eight (8%) percent assessed value of all taxable property in the municipality. Section 11-27-40, entitled, *Effect of New Article X on bonds of political subdivisions,* would appear to be the logical starting point in attempting to decide what was the intent of new Article X, Section 14. The introductory paragraph of § 11-27-40 reads:

The governing body of each of the political subdivisions of the State shall be empowered to incur general obligation

debt for their respective political subdivisions as permitted by Section 14 of New Article X and in accordance with its provisions and limitations. All laws shall continue in force and effect after the ratification date, but each of such law is amended as follows:

Paragraph 1 then reads:

If no election be prescribed in such law and an election is required by New Article X, then in every such instance, *a majority vote of the political subdivision voting in the referendum herein authorized is declared a condition precedent* (emphasis added) to the issuance of bonds pursuant to such law. The governing body of each of the political subdivisions shall be empowered to order any such referendum as is required by New Article X or any other provision of the Constitution, to prescribe the notice thereof and to conduct or cause such referendum to be conducted in the manner prescribed by Title 7, *Code of Laws of South Carolina, 1976.*

Counsel for defendants has made a point with which this Court is inclined to agree. He contends that due to large populations in many of our cities in present times that it would be quite cumbersome to get a majority of freeholders to sign a Petition. Nevertheless, the safeguards requiring a majority vote of the qualified electors of the municipality voting in a referendum authorizing the bond issuance is still a *condition precedent* for a municipality incurring bonded indebtedness in excess of eight (8%) percent of the assessed value of all taxable property located in the municipality. It would simply be a duplication to have a majority of the freeholders file a Petition calling for the referendum and then voting at the referendum.

The clear language in New Article X, Section 14, of the Constitution, implemented by § 11-27-10 of the *Code* certainly appears to repeal by implication, if not expressly, the requirement of the Petition method referred to herein. It is therefore, upon motion of Counsel for the defendants, hereby

ORDERED, ADJUDGED AND DECREED, that the Ordinance adopted by the City Council of the City of Florence, dated June 11, 1979, calling for a referendum on the question of authorizing the City of Florence to issue general obligation bonds for the purpose and amount stated has been properly enacted and in accordance with the Constitutional and statutory requirements of this state. Summary Judgment is accordingly ordered in favor of the Defendants.

And it is so ordered.